UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IRIS WOOD, )<br>)<br>Plaintiff, *Pro Se* )<br>)<br>v. )<br>)<br>IRVING KATOR, MICHAEL KATOR, )<br>CATHY A. HARRIS, )<br>Kator, Parks & Weiser, PLLC, )<br>(previously known under other )<br>law firm names) )<br>)<br>Defendants )<br>) | Civil Action No. No. 07-1597 (RMU)<br>(JURY TRIAL)<br><br>RECEIVED<br>FEB - 1 2008<br>NANCY MAYER WHITTINGTON, CLERK<br>U.S. DISTRICT COURT |

## OBJECTION TO MOTION TO DISMISS

Plaintiff, pro se, objects and responds herein to defendants Motion to Dismiss under FRCP 12(b)(6) alleging failure to state a claim upon which relief can be granted.

Plaintiff, pro se, denies defendants allegations that plaintiff has failed to state a claim upon which relief can be granted.

Plaintiff, pro se, submits herein a Response and a proposed Order Denying Motion to Dismiss.

Dated: January 31, 2008

Respectfully submitted,

*/s/ Iris Wood*

Iris Wood, Plaintiff *Pro Se*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IRIS WOOD, ) | |
| ) | |
| Plaintiff, *Pro Se* ) | |
| ) | |
| v. ) | Civil Action No. No. 07-1597 (RMU) |
| ) | (JURY TRIAL) |
| IRVING KATOR, MICHAEL KATOR, ) | |
| CATHY A. HARRIS, ) | |
| Kator, Parks & Weiser, PLLC, ) | |
| (previously known under other ) | |
| law firm names) ) | |
| ) | |
| Defendants ) | |

## OBJECTION AND RESPONSE TO MOTION TO DISMISS

Plaintiff, pro se, objects and responds herein to defendants Motion to Dismiss under FRCP 12(b)(6) alleging failure to state a claim upon which relief can be granted.

Plaintiff, pro se, denies defendants allegations that plaintiff has failed to state a claim upon which relief can be granted.

Plaintiff, pro se, submits herein a Response and a proposed Order Denying Motion to Dismiss.

Federal courts require inartful, even crudely written, pleadings to be construed liberally in pro se actions and so construe that complaints state a cause of action. *Boag v. MacDougall*, 454 U.S. 364 (1982); Certiorari granted, 642 F.2d 455, reversed and remanded. Also, *Baldwin County Welcome Center v. Brown*, 466 U.S. 147 (1984).

Pleadings are construed with deference to pro se litigants. *Maleng v. Cook*, 490 U.S. 488 (1989). Pleadings are sufficient to call for the opportunity to offer supporting evidence and to substantiate claims. *Haines* v. *Kerner,* 404 U.S. 519, 520 (U.S. 1972).

*Kerner, id,* presents no conflict with the case at hand. GW Professor John F. Banzhaf, III, law professor and attorney, successfully filed pro se complaints involving the tobacco industry. His status as an attorney and expert were not prohibitive. See *Banzhaf v. F.C.C., 405 F.2d 1082 (DC Circ. 1968).*

Plaintiff pro se is not admitted to practice law in this court and is not admitted to practice law in local courts in the Washington, DC, area. Plaintiff pro se is not experienced or expert in trial work or legal malpractice or employment law case work. (Reference Plaintiff's 2ND Affidavit enclosed here.)

In this instance, the current federal judge opined in 2005 plaintiff pro se has diminished mental capacity to perform skills in federal procurement and administrative law and separated plaintiff from her ability to perform such specialized federal work despite the history of her expertise, specialized skills, years of service and experience, and eligibility for promotions.

The case at hand is filed in good faith and is not frivolous or meritless legally or factually. See *Schwarz v. FBI,* Civil Action No. 00-2758 (JDB, September 24, 2002).

It is noted numerous cases in Defendant's Motion to Dismiss provide LEXIS cites which make it more difficult, if not more costly, for pro se plaintiff to access.

A defendant may be held liable for anything which appears to have been a natural and probable consequence of his negligence. A plaintiff therefore proves legal cause by establishing the injury in question occurred as a natural and probable consequence of the defendant's negligence.

Establishing proximate cause requires proof that plaintiff would have obtained a better result in the underlying matter if the attorney had exercised reasonable care, which does not require a demonstration of ultimate success but only that a valuable right has been lost. Plaintiff need not show a perfect claim. The duty of the lawyer is one of reasonableness under the circumstances.

In a legal malpractice case the issue is whether the lawyer's breach harmed the client by negatively impacting resolution of the legal problem at issue. *Restatement (Third) of the Law Governing Lawyers, Sections 52 & 53.*

Defendant negatively impacted resolution in plaintiff's case. For example, with little evidence developed by defendant in the EEO case with regard to the total history of promotions and pay in plaintiff's office, including prior to and after her employment, as well as participation and aggression by her boss (ie, development before court, discovery and depositions in court), plaintiff's leverage in settlement and presentation of facts in her case were impacted and reduced.

Without full evidence, for example, pertinent evidence from discovery and from sworn testimony from plaintiff's boss, one cannot predict under an objective test that plaintiff had no viable or meritorious claim in an employment case.

For a case example, in the New York *Rubens* case cited by Defendant, a major issue was the attorney's decision not to call additional expert witnesses.

2

This is very different from an attorney's failure to call the main witness, the one major witness and the boss, in an employment case, who was also accused of striking plaintiff physically and tormenting plaintiff with his temper tantrums, ie, provoking plaintiff.

Calling "additional expert witnesses" is a far cry from calling the one witness who possessed knowledge of and participation in the entire history of personnel actions, endeavors, and events in plaintiff's office, as the only office and division manager for approximately 30 years, in this employment case. Therefore, by clarification, *Rubens v. Mason, 417 F.Supp.2d 262 (S.D.N.Y. 2006)*, is not on point and does not apply to the case at hand.

Furthermore, defendant's refusal to depose the boss came AFTER the judge in this case ordered attorney defendants here in September 2004 to remain on this case after defendant attorneys had filed it with more than 10 years on the case.

To quote Judge Urbina who referred to plaintiff's employment case in court in 2004 as "this old case," defendant attorneys were required to proceed.

Defendant attorneys, without support of their insurance carrier, have alleged various facts that must be disputed and clarified in jury trial.

For example, defendants imply distorted import to totally volunteer organizations such as "APAs", which carry out lobbying functions to affect legislation and that develop and issue policy papers for various uses on controversial issues such as the issue at hand, forced mental examinations upon civilians, including for lobbying purposes. Furthermore, such organizations have no mandatory hold over professionals, their memberships, their licenses, or their legal liabilities.

In another example, what plaintiff knew about the subject of indemnification in this setting was provided by defendant who opposed it himself in writing.

Further evidence and facts would need to be provided during the jury trial process here. Many things may require clarification.

In the insurance case cited by Defendants, *Athridge v. Aetna Casualty & Surety Co., 351 F.3rd 1166 (D.C. Cir. 2003)*, the court refers to the reasonable standard of care, establishing a breach of that standard, and a causal relationship between the violation and the harm which plaintiff pro se addressed in pro se plaintiff's original Complaint, Amended Complaint, and 1st Affidavit.

The court in *Athridge* provides, if the attorney's lack of care is so obvious that the jury can find negligence as a matter of common knowledge, expert testimony is not required to prove the standard of care and its violation.

Plaintiff pro se asserts that failure to perform such basic functions in an

3

employment case constitutes matters of common knowledge when defendant attorney refused to depose the one person who was the boss, the long-standing manager, as well as plaintiff's accused abuser with a reputation for having a fierce temper and examples of temper tantrums and striking plaintiff.

It is further a matter of common knowledge that discovery in an employment case alleging unequal treatment or being held back in promotions, would require obtaining copies of all the personnel documents from plaintiff's division of employment, in order to make such comparisons, to draw conclusions, and to assert findings.

An expert witness is not needed for the jury to make such findings above in favor of plaintiff about the need for evidence, discovery, or a deposition.

However, if expert testimony is needed, then it is proper to present in jury trial.

If the judge here requires advance presentation of such evidence and testimony, before jury trial, then plaintiff pro se would need ample opportunity to do so.

Another case, *Mills v. Cooter, 647 A.2d 1118 (D.C. App. 1994),* hardly appears on point with this case, where attorneys refused to join real estate brokers in an action for an alleged fraudulent real estate transaction and it was confirmed by expert witness.

It is of further note that during the span of years plaintiff's EEO employment case was nursed and not filed in federal court while plaintiff was employed, defendant insisted upon focusing upon plaintiff's boss almost to the exclusion of others when defendant stated he did not want to make out a "conspiracy." Yet, when the time came to confront plaintiff's boss, to obtain A HUGE AMOUNT OF INFORMATION AND TESTIMONY FROM HER BOSS; after focusing on him for years in the case, at least plaintiff was told; the defendant, plaintiff's advocate, turned away from the task and challenge!

Defendant also failed to vigorously depose a witness he begrudgingly called in fall 2004.

Furthermore, it was the defendant who had explained that the sex discrimination would lie or be found in examining personnel matters, pay, and promotion in particular on plaintiff's team (inside her office and division) for evidence of disparate treatment. Plaintiff obtained this analysis or approach from defendant.

Yet, when the opportunities came to develop these strategies by confronting witnesses and accessing and coordinating evidence, defendants shrank from the challenge. They even misrepresented it to plaintiff. At times defendants misrepresented and denied presenting such strategies as well as misrepresented access of witnesses, too.

For example, plaintiff's boss continued as a member in good standing of the MD Bar and continued to practice law during the time when plaintiff asked defendant to depose her boss. This information was pubic information yet plaintiff had to obtain it and

present it to defendant who refused to acknowledge it, who continued to refuse to depose, and who looked the other way. Information presented by defendant about plaintiff's boss was odd and the source was unknown.

Indeed, defendant made much ado about generic information on sex discrimination against women in general by plaintiff's institutional employer; however, plaintiff steadfastly shrank from going after information or building anything which pointed to plaintiff's specific case and her specific offenders and abusers.

Plaintiff was also mindful during the remainder of 2004 that this same judge had warned in September 2004 he may later allow plaintiff's case to go without the attorney who had handled the whole 10 year history of the case.

Complaining again to this judge about anything; about defendant's failure to depose plaintiff's boss, or about plaintiff's learning in fall 2004 that Discovery had not included asking for or obtaining basic personnel documents from and about plaintiff's office, division and employees; would not have helped plaintiff.

No doubt plaintiff was not at her best in 2004 during the last months of her husband's life. While plaintiff was driving hundreds of miles back and forth to Washington, DC, alone in 2004, plaintiff was exhausted, attempting to coordinate and monitor her case, leave messages, and assist her husband before his death in early 2005.

Thank god, plaintiff did not have to give her husband the bad news from this court and judge that her case was being pushed aside; after all the time plaintiff and her husband had waited and after all their losses; the decision for which came only weeks after her husband's death in 2005.

Dated: January 31, 2008

Respectfully submitted,

*Iris Wood*

Iris Wood, Plaintiff *Pro Se*

5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IRIS WOOD, | ) | |
| | ) | |
| Plaintiff, *Pro Se* | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-1597 (RMU) |
| | ) | (JURY TRIAL) |
| IRVING KATOR, MICHAEL KATOR, | ) | |
| CATHY A. HARRIS, | ) | |
| Kator, Parks & Weiser, PLLC, | ) | |
| (previously known under other | ) | |
| law firm names) | ) | |
| | ) | |
| Defendants | ) | |

## PLAINTIFF'S 2ND AFFIDAVIT

Iris Wood, plaintiff, affirms under oath, as follows:

Plaintiff pro se is not admitted to practice law in this court and is not admitted to practice law in local courts in the Washington, DC, area. Plaintiff pro se is not experienced or expert in trial work or legal malpractice or employment law case work.

*[signature]*

Iris Wood, Plaintiff *Pro Se*


STATE OF SOUTH CAROLINA

The foregoing pleading was sworn to, subscribed, and acknowledged before me by Iris Wood on the 31st day of January, 2008.

*[notary signature]* Mary McAnnett, Notary

Expires 10-17-2014

Certificate of Service

I hereby certify that a copy of the foregoing are served by first class mail on:

Adrienne Tranel, Esq
Kator, Parks & Weiser, PLLP
1020 19th Street, NW, Suite 350
Washington, DC 20036

Iris Wood, pro se
Date: 1/31/2008