UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IRIS WOOD,<br><br>Plaintiff, *Pro Se*<br><br>v.<br><br>IRVING KATOR, MICHAEL KATOR,<br>CATHY A. HARRIS,<br>Kator, Parks & Weiser, PLLC,<br>(previously known under other<br>law firm names)<br><br>Defendants | Civil Action No. No. 07-1597 (RMU)<br>(JURY TRIAL DEMANDED) |

RECEIVED
MAR 0 6 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## OPPOSITION TO DEFENDANTS' FEBRUARY 2008 REPLY

Plaintiff, pro se, opposes and responds herein to defendants' February 2008 Reply under FRCP 12(b)(6) alleging failure to state a claim upon which relief can be granted.

Plaintiff, pro se, denies defendants allegations that plaintiff has failed to state a claim upon which relief can be granted.

Plaintiff, pro se, submits herein a Response and a proposed Order Denying Motion to Dismiss.

Dated: March 5, 2008

Respectfully submitted,

*[signature]*
Iris Wood, Plaintiff *Pro Se*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IRIS WOOD, )<br>)<br>Plaintiff, *Pro Se* )<br>)<br>v. )<br>)<br>IRVING KATOR, MICHAEL KATOR, )<br>    CATHY A. HARRIS, )<br>    Kator, Parks & Weiser, PLLC, )<br>    (previously known under other )<br>    law firm names) )<br>)<br>Defendants ) | Civil Action No. No. 07-1597 (RMU)<br>(JURY TRIAL DEMANDED) |

## OPPOSITION AND RESPONSE TO DEFENDANTS' FEBRUARY 2008 REPLY

Plaintiff, pro se, opposes and responds herein to defendants' February 2008 Reply under FRCP 12(b)(6) alleging failure to state a claim upon which relief can be granted.

Plaintiff, pro se, opposes and denies defendants allegations that plaintiff has failed to state a claim upon which relief can be granted.

Plaintiff, pro se, submits herein a Response and a proposed Order Denying Motion to Dismiss.

Defendants based their argument largely on holdings in Richards v. Duke University, 480 F.Supp.2d 222 (D.D.C. 2007) which does not apply to this case on any point.

The court in Richards based its ruling and holdings for dismissal upon the following issues:

1- lack of jurisdiction over parties,
2- lack of subject matter jurisdiction,
3- statute of limitations, and
4- unprotected rights.

The court explained that the subject matters of Richards' claims are fantastic and patently insubstantial under F.R.C.P. Rule 12(b)(1). Richards, page 222, 224.

The court in <u>O'Connor v. U.S.</u>, 159 F.R.D., 22, 23 (D.Md.1994), also cited in <u>Richards</u> at p 234, found lack of subject matter jurisdiction over the complaint when it held that a frivolous and patently unsubstantial complaint may be dismissed for lack of subject-matter jurisdiction under FRCP 12(b)(1).  See similar conclusion in <u>Neitzke v. Williams</u>, 490 U.S. 319, 109 S.Ct. 1827 (1989).

No jury considers the subject matter of legal malpractice to be frivolous or fantastic, as claimed by defendants.  Juries consisting of women and minorities do not consider civil rights employment issues to be frivolous or fantastic.

Failure to act is the kind of care and skill in malpractice cases that can be found within the jury's "common knowledge" without expert testimony.  <u>O'Neil v. Bergan</u>, No. 81-1034, District of Columbia Court of Appeals, 452 A.2d 337, 1982.  The current case here falls within the "common knowledge" exception to the expert testimony requirement for repeated failure to act by defendants; certainly not frivolous or fantastic.

The decision by the Richards' court per 12(b)(6) rested upon plaintiff's claim as "time-barred" at page 237.

The court's final holdings at page 222, <u>Richards</u> case, make no reference to the plaintiff's pro se or professional status and, therefore, such comments should be considered no more than dictum.

In dictum the court found she had not plead the specificity of fraud as required under D.C. law at page 237.  Even as dictum the case is not applicable here because any jury would find pro se plaintiff has shown basic elements of simple or willful negligence under both tort and contract law as required under D.C. law, including existence of attorney-client relationship; breach of duty by attorney defendants, and proximate cause of harm and damages to plaintiff.

In the current case, plaintiff's complaints, and affidavits in support of complaints, are all presented as evidence and are replete with facts which support clear examples of negligence and demonstrate defendants' breach of professional duty.  <u>Richards</u>, page 224.

They would convince any jury of a prima facie case of professional negligence.

A jury would see that pro se plaintiff has made out her claims and causes of action in negligence upon which relief can be granted.

Furthermore, in <u>Richards</u> at page 235, the court concluded that plaintiff was a knowledgeable attorney.  The undersigned pro se plaintiff certifies that she is NOT experienced or expert in matters of court litigation or legal malpractice.  Reference plaintiff's evidence and pleadings in this case.

In addition, the presiding judge in this case himself concluded the undersigned pro se plaintiff suffers sufficient mental deficiencies to exclude this pro se plaintiff from

2

working even in her experienced area of administrative law years ago based upon mental findings. Reference District Court Decision, June 2005.

A judge would be hard put to hold plaintiff to the standards of a practicing expert in litigation, legal malpractice, or civil rights law while separating her from her own specialty in law 10 years ago.

Besides their elementary legal work, defendants have been so unprofessional as to exclude most case cites of print sources in their Motion to Dismiss, in a shoddy effort to undercut pro se plaintiff.

Then defendants intentionally violated procedures pertaining to pro se parties by failing to mail copies of pleadings and notices consistently to pro se plaintiff, failing to notify plaintiff of changes, and, therefore, failing to provide proper certificate of service. Failing to mail notices and copies was intentional. Plaintiff is still awaiting some copies in the mail.

Defendants' major attack has been to scold and guilt-trip a citizen for filing a claim pro se because they have nothing else. Defendants want to order pro se plaintiff out of the courthouse; order her to hire an attorney to decipher the 10+ years of "strategy" by defendants. If defendants don't wish to work with citizens at the courthouse then maybe they should reconsider their work.

Ironically, defendants chastise plaintiff for representing herself when they have foregone representation by their malpractice insurance carrier in order to represent themselves. Is that the kettle calling the pot black? No doubt the presiding federal judge feels cursed, at least frustrated. Never thought I would feel sorry for a federal judge.

Defendants' legal work and arguments are so elementary in their own case; it provides evidence of their inept legal work in their and my case.

These are defendants' only tools. They have nothing more than elementary demands for dismissal, with general arguments used against all pro se plaintiffs, hoping the judge will take up a torch against a pro se plaintiff's demand for a jury trial.

Defendants show no better legal skills in their own case than they showed in plaintiff's case. They demonstrate poor, elementary legal work and forced arguments laced with tricks. Maybe it is defendants who should take leave of the court.

Defendants' only alternative is to invite a federal judge to punish a pro se plaintiff and deny yet another citizen a jury trial.

We should have a right to be heard before a jury of our peers. Men and women have died for our right to be heard. Is it justice or Just Us?

Contrary to instructions from the Supreme Court in <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (U.S. 1972), this court deals more harshly with a pro se plaintiff than with those admitted to practice law in this court. Case in point, herein.

The local Bar is allowed to intentionally modify certificate of process procedures, without notice, as they choose, as a prelude, but pro se plaintiff is not allowed an inadvertent error. The court held up pro se plaintiff's motion for a week, causing plaintiff to inquire for <u>5 days</u> before notifying plaintiff, for a chance to dismiss the case and prevent redress. In contrast, members of the local Bar were notified immediately, within <u>one day</u>, when their request was only reduced, so they would have more than a week's notice and could be prepared, in contrast to pro se party.

Pro se procedures have been used to thwart plaintiff's access to the courts and a jury trial. While the write-up in the docket was longer for members of the local Bar, punishment for the local Bar members was less. Likewise, punishment for the pro se party attempting to resolve a procedural matter, albeit mistaken, was severe.

<u>O'Neil v. Bergan</u>, No. 81-1034, District of Columbia Court of Appeals, 452 A.2d 337, 1982, provides instruction on the need for expert witnesses in a jury trial as it relates to legal malpractice and other aspects of professional malpractice in the District of Columbia.

<u>O'Neil</u> explains the liability of an attorney for failure to properly perform his or her duties is governed by the same general standard of care in the District of Columbia whether a complaint is based upon tort or breach of contract.

The "reasonable skill" promised in an implied agreement is the same as the "reasonable skill" which an attorney must display to avoid tort liability, per <u>O'Neil</u>.

The RULES OF PROFESSIONAL CONDUCT, D.C. Bar Appx. A (2007) (Amended by D.C. Court of Appeals, effective February 1, 2007) as well as *Restatement*, may be used as standards for evaluating professional conduct in the District of Columbia.

The elements of an action for professional negligence are the same as those of ordinary negligence in the District of Columbia. According to <u>O'Neil</u>, plaintiff is allowed to present evidence that establishes the standard of care, ie, what is reasonable care under the circumstances, including what are similar circumstances with special training and experience.

Where doctor's or attorney's lack of care and skill is not so obvious that the trier of fact could have found negligence as a matter of common knowledge (which is usually "failure" to act), plaintiff is required to present expert testimony establishing the standard of care during trial in the District of Columbia (<u>O'Neil</u> case).

There are two exceptions to the requirement for expert testimony during trial. One is in the matter of common knowledge (<u>O'Neil</u> above), usually "failure" to act by the

4

professional, and the other may apply to bench trial if the standard of care is recognized by the trial court which is familiar with the standards of practice in its locality.

Plaintiff looks forward to the opportunity to assess the need for expert testimony during jury trial. Defendants should be concerned about finding a strong expert witness who will condone their failures and omissions.

It is noted defendants claim much credit for an interview of the main witness more than 10 years ago. However, plaintiff considers that meeting to be more evidence of defendants' progressive "failures" in her case and looks forward to deposing her boss, John Kominski, since defendants refused to do so. Defendants have not denied refusing to depose plaintiff's boss and the veteran manager, John Kominski, in her employment case.

At the root of the problem is a progression of failures by defendants where less expensive forms of discovery should have been emphasized such as requests for admissions, requests for production of documents, and interrogatories, before depositions in 2004. Defendants failed to do this complete groundwork before depositions as part of their professional responsibilities and lawyerly duties during discovery and during years of development of the case. For example, omissions include development of the original EEO claims over many years instead of nearly every meeting being only about settlement.

They had years to do these things and there is no excuse.

I was expert in my field and prevailed in nearly every project. My credentials and skills supported the double promotion of the male on my team from a GS-905-14 to a coveted GM-905-15 when he was minimally qualified with virtually no supervisory or management experience AND I WAS HELD BACK when I was probably overqualified. Nice work (for him), if you can get it.

I may be a "pioneer" as part of the first group of women in my profession but I'm also conservative. With regard to court work, litigation, and other specialties, I felt inadequate and deferred to the older and/or more experienced defendants when I needed help plus I had to move away due to loss of my salary.

Then I felt betrayed by my own colleagues whom I trusted. AFTER they attempted to WITHDRAW in 2004 (after DESIGNING the long drawn out "strategy" in my case where my 5-year "constructive termination" was ignored and turned into 10 years), I began to notice problems. I asked for personnel documents in my employment case (about promotions, pay, & punishment in my division/office), asked for my boss' statements to security about his hitting me, and demanded that my old boss be deposed; yet I came up empty-handed.

During the early years I did what I thought was best in that I gave the defendants my written instructions about any future settlement. I told them in writing that they did

5

not have authority to settle my case without my express consent and understanding AND my signature.

I regret to have to propose that much of this has been an attempt to get around my written instructions to my attorneys, in a long, long path (set-up) leading to a forced settlement which included deceit to bring it about.

The manipulation of many things, including the dynamics between the two basic parts of my case, the statutory EEO claims and the constitutional procedural claims, the time lines, the excuses and lies, lead me to certain conclusions.

Ignoring the development of my basic EEO claims was profound, gross. The reliance on sterile, procedural constitutional arguments was perplexing. Defendants call it a "strategy." All experienced litigators know that federal judges hate old cases. To quote the presiding judge in both cases, "This old case!" he said from the bench.

At some point a "strategy" passed into "negligence."

One only needs to look at this presiding judge's 2005 decision, which came out only weeks after my husband's death. Judge Urbina says the EEO statutory claims were not strong enough, yet my attorneys ignored much of the development, especially the sex discrimination issues which would have pointed the finger at and focused on our colleagues in the law office; and would have explained a lot of the motivations and time line as events occurred.

I can only conclude that everything was done to bring about one conclusion, a set-up, a forced settlement, and all the details that go with that paradigm, including no intentions to ever litigate the case and more.

I feel betrayed by my own colleagues whom I trusted. I feel betrayed by my profession, by the courts, by the system, when I invested my life in it. After I invested my life since my youth, since before my open-heart surgery for my birth defect, since before I left my blue-collar parents' beloved farm, toward my career, I have now spent 15 years, some of the best years of my life and what should have been the best years of my career, fighting this injustice, where all that my parents and I worked for has been trashed.

Dated: March 5, 2008

Respectfully submitted,

*[signature]*

Iris Wood, Plaintiff *Pro Se*

Certificate of Service

I hereby certify that a copy of the foregoing are served by first class mail on:

Adrienne Tranel, Esq
Kator, Parks & Weiser, PLLP
1200 18th Street, NW, Tenth Floor
Washington, DC 20036

_____
Iris Wood, pro se
Date: 3-5-2008