RECEIVED
APR 3 0 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IRIS WOOD, ) | |
| ) | |
| Plaintiff, *Pro Se* ) | |
| ) | |
| v. ) | Civil Action No. 07-1597 (RMU) |
| ) | (JURY TRIAL DEMANDED) |
| IRVING KATOR, MICHAEL KATOR, ) | |
| CATHY A. HARRIS, ) | |
| Kator, Parks & Weiser, PLLC, ) | |
| (previously known under other ) | |
| law firm names) ) | |
| ) | |
| Defendants ) | |

## OPPOSITION TO DEFENDANTS' MARCH 2008 MOTION TO DISMISS

Plaintiff, pro se, opposes and responds herein to defendants' March 2008 Motion to Dismiss under FRCP 12(b)(6) alleging failure to state a claim upon which relief can be granted.

Plaintiff, pro se, denies defendants allegations that plaintiff has failed to state a claim upon which relief can be granted.

Plaintiff, pro se, submits herein an Opposition and Response and a proposed Order Denying Motion to Dismiss.

Dated: April 29, 2008

Respectfully submitted,

*[signature]*
Iris Wood, Plaintiff *Pro Se*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IRIS WOOD, )<br>)<br>Plaintiff, *Pro Se* )<br>)<br>v. )<br>)<br>IRVING KATOR, MICHAEL KATOR, )<br>CATHY A. HARRIS, )<br>Kator, Parks & Weiser, PLLC, )<br>(previously known under other )<br>law firm names) )<br>)<br>Defendants ) | Civil Action No. 07-1597 (RMU)<br>(JURY TRIAL DEMANDED) |

## OPPOSITION AND RESPONSE TO DEFENDANTS'

## MARCH 2008 MOTION TO DISMISS

  Plaintiff, pro se, opposes and responds herein to defendants' March 2008 Motion to Dismiss under FRCP 12(b)(6) alleging failure to state a claim upon which relief can be granted.
  Plaintiff, pro se, opposes and denies defendants allegations that plaintiff has failed to state a claim upon which relief can be granted. Plaintiff has stated a viable claim upon which relief can be granted.
  Plaintiff, pro se, submits herein an Opposition and Response and a proposed Order Denying Motion to Dismiss.
  Federal courts require inartful, even crudely written, pleadings to be construed liberally in pro se actions and so construe that complaints state a cause of action. *Boag v. MacDougall*, 454 U.S. 364 (1982); Certiorari granted, 642 F.2d 455, reversed and remanded. Also, Baldwin County Welcome Center v. Brown, 466 U.S. 147 (1984).
  Pleadings are construed with deference to pro se litigants. Maleng v. Cook, 490 U.S. 488 (1989). Pleadings are sufficient to call for the opportunity to offer supporting evidence and to substantiate claims. Haines v. Kerner, 404 U.S. 519, 520 (U.S. 1972).
  Kerner, *id*, presents no conflict with the case at hand. GW Professor John F. Banzhaf, III, law professor and attorney, successfully filed pro se complaints involving the tobacco and food industries. His status as an attorney and professor were not prohibitive. See Banzhaf v. F.C.C., 405 F.2d 1082 (DC Circ. 1968).
  Plaintiff pro se is not admitted to practice law in this court and is not admitted to practice law in local courts in the Washington, DC, area. Plaintiff pro se is not

experienced or expert in trial work or legal malpractice or employment law case work. (Reference Plaintiff's 2ND Affidavit.)

In this instance, the presiding judge opined in 2005 plaintiff pro se has diminished capacity to perform skills in federal government procurement and administrative law and separated plaintiff from her ability to perform such specialized federal government work over 10 years ago despite her history of expertise, specialized skills, years of service and experience, eligibility for promotions, and opportunity for advancement.

Defendants conclude their arguments largely on holdings in Richards v. Duke University, 480 F.Supp.2d 222 (D.D.C. 2007) which does not apply to this case on any point.

The court in Richards based its ruling and holdings for dismissal upon the following issues:
1- lack of jurisdiction over parties,
2- lack of subject matter jurisdiction,
3- statute of limitations, and
4- unprotected rights.

The court explained that the subject matters of Richards' claims are fantastic and patently insubstantial under F.R.C.P. Rule 12(b)(1). Richards, page 222, 224.

The court in O'Connor v. U.S., 159 F.R.D., 22, 23 (D.Md.1994), also cited in Richards at p 234, found lack of subject matter jurisdiction over the complaint when it held that a frivolous and patently unsubstantial complaint may be dismissed for lack of subject-matter jurisdiction under FRCP 12(b)(1). See similar conclusion in Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

No jury considers the subject matter of legal malpractice to be frivolous or fantastic, as claimed by defendants. Juries consisting of women and minorities and other citizens do not consider civil rights employment issues to be frivolous or fantastic.

The decision in Richards does not provide a different "pro se" standard to the detriment of plaintiff or to the benefit of the defendants in this case.

The case at hand is filed in good faith and is not frivolous or meritless legally or factually. See Schwarz v. FBI, Civil Action No. 00-2758 (JDB, September 24, 2002).

The current case here is certainly not frivolous or fantastic. Furthermore, it falls within the "common knowledge" exception to the expert testimony requirement on many issues for repeated or willful failure by defendants to act. Failure to act is the kind of care and skill in malpractice cases that can be found within the jury's "common knowledge" without expert testimony. O'Neil v. Bergan, No. 81-1034, District of Columbia Court of Appeals, 452 A.2d 337, 342, 1982.

The decision by the Richards' court per 12(b)(6) rested upon plaintiff's claim as "time-barred" at page 237.

The court's final holdings at page 222, Richards case, make no reference to the plaintiff's pro se or professional status and such comments may be considered dictum.

In dictum the court found Richards had not plead the specificity of the elements of fraud as required under D.C. law, page 237. Even as dictum the case is not applicable here because any jury would find pro se plaintiff has shown basic elements of simple or willful negligence under both tort and contract law as required under D.C. law, including existence of attorney-client relationship; standard of care, breach of duties and fiduciary duties by attorney defendants; and proximate cause of harm and damages to plaintiff.

In the current case, plaintiff's complaints and affidavits in support of complaints, are presented as evidence and are replete with facts which support clear examples of negligence, especially failures to act, and demonstrate defendants' breach of professional or fiduciary duties and harm to plaintiff and her case. Richards, page 224.

They would convince any jury of a prima facie case of professional negligence.

A jury would see that pro se plaintiff has made out her claims and causes of action in negligence and more, upon which relief can be granted.

In Edelberg v. Roberts, Civil Action No. 04-1992 (D.D.C. 2005) the court explained where the injury suffered as a result of legal malpractice is the loss of a cause of action, the measure of damages is generally the value of the claim lost.

Furthermore, in Richards at page 235, the court concluded that plaintiff Richards was a knowledgeable attorney. The undersigned pro se plaintiff certifies that she is NOT experienced, knowledgeable or expert in matters of court litigation or legal malpractice. Reference plaintiff's pleadings and 2nd Affidavit in this case.

It is noted again that the presiding judge in this case himself concluded the undersigned pro se plaintiff suffers sufficient deficiencies to exclude her from working even in her experienced, skilled area of administrative law in a setting where she had advancement opportunity and promotion eligibility. Reference District Court Decision, Wood v Billington, 03-1343 (RMU), June 2005.

A judge would find it difficult to hold plaintiff to the standards of a practicing attorney or expert in litigation, legal malpractice, or civil rights law while separating her from her own specialty in administrative law 10 years ago with expertise, eligibility for promotions and opportunity for advancement.

Defendants' favorite attack has been to scold and guilt-trip a citizen for filing a claim pro se because they have nothing else. Defendants want to order pro se plaintiff out of the courthouse; order her to hire an attorney to decipher the 10+ years of "strategy" by defendants.

Ironically, defendants chastise plaintiff for representing herself when they have foregone representation by their malpractice insurance carrier in order to represent themselves. That's the kettle calling the pot black. Plaintiff never thought she might feel sorry for a federal judge with two pro se parties.

Among other reasons, having no counsel from their insurance carrier to manage their defense gives defendants freedom to litigate and appeal and freedom from pressure to settle, while they don't like it when their clients choose the same route.

Defendants' legal work and arguments are so elementary in their own case; it provides evidence of their inept legal work in their and plaintiff's case.

These are defendants' only tools. They have nothing more than elementary demands for dismissal, with general arguments used against all pro se plaintiffs, hoping the judge will take up a torch against a pro se plaintiff's demand for a jury trial.

Defendants show no better legal skills in their own case than they showed in plaintiff's case. They demonstrate poor, elementary legal work and forced arguments.

Defendants' only alternative is to invite a federal judge to punish a pro se plaintiff and deny yet another citizen a jury trial.

We should have a right to be heard before a jury of our peers. Men and women have died for our right to be heard. Is it justice or Just Us?

3

To state a claim for legal malpractice, a party must allege facts which show an attorney-client relationship with a duty or duties and standards of care for those duties, breach of one or more duties, proximate causal connection between the breach or negligent conduct and the resulting injury, and actual loss or damage resulting from the attorney's malpractice. Perez v. Goldin, 360 F.Supp.2d 12, 13, Sept 2003. Also, Macktal v. Garde, 111 F.Supp.2d 18, 21 (D.D.C. 2000).

A uniform standard of care applies in actions for negligence: reasonable care under the circumstances. Lawyers with special training and experience must exercise a degree of reasonable care and skill expected of lawyers acting under similar circumstances. O'Neil v. Bergan, No. 81-1034, District of Columbia Court of Appeals, 452 A.2d 337, 341, 1982.

O'Neil, page 341, provides instruction on the need for expert witnesses in a jury trial as it relates to legal malpractice and other aspects of professional malpractice in the District of Columbia.

O'Neil, p 343, explains the liability of an attorney for failure to properly perform his or her duties is governed by the same general standard of care in the District of Columbia whether a complaint is based upon tort or breach of contract. The "reasonable skill" promised in an implied agreement is the same as the "reasonable skill" which an attorney must display to avoid tort liability.

The RULES OF PROFESSIONAL CONDUCT, D.C. Bar Rules, Appx. A (2007) (Amended by D.C. Court of Appeals, effective February 1, 2007) as well as *Restatement*, may be used as standards for evaluating professional conduct in the District of Columbia. For example, see Rules 1.1, 1.3, 1.4, 1.7, 1.8, 1.9, and 3.2.

The elements of an action for professional negligence are the same as those of ordinary negligence in the District of Columbia. According to O'Neil, p 341, plaintiff is allowed to present evidence that establishes the standard of care, ie, what is reasonable care under the circumstances, including what are similar circumstances with special training and experience.

Where doctor's or attorney's lack of care and skill is not so obvious that the trier of fact could have found negligence as a matter of common knowledge (which is usually "failure" to act), plaintiff is required to present expert testimony establishing the standard of care during trial in the District of Columbia (O'Neil case, page 342).

Haines v. Kerner, 404 U.S. 519, 520 (U.S. 1972) held pleadings are sufficient to call for the opportunity to offer supporting evidence and to substantiate claims.

There are two exceptions to the requirement for expert testimony during trial. One is in the matter of common knowledge (O'Neil above, page 342), usually "failure" to act by the professional, and the other may apply to bench trial if the standard of care is recognized by the trial court which is familiar with the standards of practice in its locality.

Plaintiff looks forward to the opportunity to assess the need for expert testimony during jury trial. Plaintiff asserts that defendants conduct and the issues it raises are all or in part matters of "common knowledge," including failure to act, unless some come under their role as specialists. Defendants should be concerned about finding a strong expert witness who will condone their failures and omissions.

It is noted defendants claim much credit for an interview of the main witness more than 10 years ago. However, plaintiff considers that meeting to be more evidence

4

of defendants' progressive "failures" in her case and looks forward to deposing her boss, John Kominski, since defendants refused to do so.

Mr. Kominski continues to this year as an active member of the Maryland Bar with a local address. Defendant was confronted with that and additional public information including a 2003 publication which stated Mr. Kominski was practicing law part-time. Defendants have not explained or denied refusing to depose plaintiff's boss and veteran manager, John Kominski, an active member of the MD Bar this year, in her employment case which should establish or contribute to a prima facie case against the defendants in this case and provoke additional causes of action.

Defendants assert all their failures and omissions were "strategy" and plaintiff asserts they were negligence, intentional negligence, contract violations, violations of duties including fiduciary duties, and deceit (fraud). Pursuing more answers to these questions will be part of the discovery and trial process in this case.

At the root of the problem is a progression of failures by defendants where less expensive forms of discovery should have been emphasized such as requests for admissions, requests for production of documents, and interrogatories of numerous individuals, before depositions in 2004. Defendants failed to do this complete groundwork before depositions as part of their professional responsibilities and lawyerly duties during discovery and during years of administrative development of the case. For example, omissions include failure to develop the original EEO claims over many years while most meetings addressed settlement.

Plaintiff asks defendant to show how many meetings were held pursuant to development of evidence in EEO claims on the administrative level over the years that did NOT include or focus on discussion of settlement vs all total other meetings pertaining to the EEO case which did include settlement discussion.

It is necessary during discovery to put the whole picture together – 10 plus years – to view as a "scheme," not as a "strategy."

For example, defendants claim to have deposed one witness for another. Defendant was supposed to depose more than one witness. Mr. Kominski was the GC for more than 30 years and was the only member of management in OGC from the 1970's until the 1990's, including after plaintiff's arrival. Mr. Kominski is the official who proposed a series of requests for promotions for one, then two, non-managers before and after plaintiff's arrival in the law office. Mr. Kominski must provide that history and the politics involved. Mr. Kominski was also plaintiff's boss and he hit her.

Review of the deposition of Lincoln reveals defendants soft-peddled the questions to him, failed to confront him, failed to get to the real issues, failed to tie things together, failed to go for the jugular, when Lincoln had attempted to have plaintiff fired only days after using plaintiff's credentials to obtain his double promotion in 1992 and on other occasions. All of this was done by Lincoln despite plaintiff prevailing for the institution or agency in a case before GAO and her expertise and specialty in federal procurement law which approached if not rivaled his own. Defendants failed to diligently explore and reveal the lengths Lincoln had gone over time to obtain his promotion to GS or GM-15, his desires and history dealing with female competition as part of the statutory sex discrimination on plaintiff's team, and Lincoln's views about his veteran years of service.

The entire scheme, which included defying plaintiff's instructions to depose her boss and abuser who hit her, Mr. Kominski, was framed in deceit. The scheme was

concealed from plaintiff in violation of their duties to her and in violation of her instructions to defendants but also carried out as deceit (fraud) to protect the law office and individual colleagues who committed discrimination.

They had years on the administrative level to develop evidence and opportunity during discovery, even in 2004-2005, to redeem themselves at least in part, yet defendants continued, even after negotiations, even after being ordered by the presiding judge to proceed, even after being ordered by the plaintiff, to protect the same elements and witnesses associated with the employer while claiming to represent the employee.

There remains to be seen if collusion can be proved during discovery but there is no excuse for the failures and omissions as specialists in their fields and no excuse for the deceit and fraud.

Plaintiff was expert in her field and prevailed in nearly every project. Plaintiff's credentials and skills supported the double promotion of the male (Lincoln) on plaintiff's team from a GS-905-14 to a coveted GM-905-15 when he was minimally qualified with little or no sustained supervisory or management experience AND PLAINTIFF WAS HELD BACK when plaintiff was overqualified, with skills approaching if not matching Mr. Lincoln.

Funds provided and approved by Congress for career employees in plaintiff's office and division were used to promote the male employee on her team while plaintiff was pushed under the bus AFTER he used plaintiff's credentials for his grand double promotion.

Virtually the next day, the DAY AFTER USING HER in 1992 for his own promotions, Lincoln asked for plaintiff's termination; ie, that a skilled career female colleague and attorney be removed. That's how Mr. Lincoln wanted to handle even the slightest competition from women colleagues.

Plaintiff may be a "pioneer" as part of the first group of women in her profession but she is also conservative. With regard to court work, litigation, and other specialties, plaintiff felt inadequate and deferred to the older and/or more experienced defendants when plaintiff needed help plus plaintiff had to move away due to loss of salary and her parents' illnesses, advanced ages and death.

Plaintiff felt betrayed by her own colleagues whom plaintiff trusted. Defendants claim they designed a long drawn out "strategy" in her case where her 5-year (60 months) "constructive termination" (far exceeding time deemed by the courts) was further ignored and turned into 10 years which they also call a "strategy."

AFTER defendants attempted to WITHDRAW in 2004, plaintiff noticed problems with discovery which were validated by the Judge's decision in June 2005.

Granted, if plaintiff had accepted the settlement offer in August or September 2004 under threat of withdrawal, many things would not have come to light. In August 2004 she withstood attempts to withdraw and more. The settlement was intended to cover up defendants' omissions and failings. The settlement conference was set-up early intentionally to cover-up defendants' failure to confront the employer's law office and certain individuals, colleagues, from the employer's law office. Defendants never intended to confront, depose, question.

After August 2004, during discovery, plaintiff asked for personnel documents in her employment case (about comparative promotions, pay, and punishment in her division/office), asked for her boss' statements to employer's security office about his

6

hitting her, and plaintiff confronted the defendants and demanded that her boss Mr. Kominski be deposed; yet plaintiff came up empty-handed.

During the early years plaintiff did what she thought was best in that she gave the defendants her written instructions about any future settlement. Plaintiff told defendants in writing that they did not have authority to settle her case without her express consent, approval, and signature.

Much of this has been an attempt to ignore and undermine plaintiff's written instructions to her attorneys, in a long path (set-up) leading to a forced settlement which included deceit to bring it about; thereby, getting around plaintiff's instructions by means of deceit and bad faith.

Negotiations were carefully set up prior to discovery so defendants would not be put in a position to confront their colleagues in the employer's law office, ie, plaintiff's abusers. Plaintiff would be pressured to accept settlement without discovery. If defendants "threw" plaintiff's case in return for a settlement, the deal was to NOT confront and expose the individual colleagues or the employer's law office.

After plaintiff did not accept settlement, problems showed up, from defendant's failure to obtain documents to refusal to depose or carry out any or effective depositions to failure to perform progressive discovery and other lawyerly duties.

The manipulation of many things, including the dynamics between two basic parts of the case, the statutory sex and discrimination claims and the constitutional procedural claims, the time lines, the excuses and lies, lead to certain conclusions.

If one asserts there is nothing wrong with a deal to obtain settlement or to force settlement; if one asserts there is nothing wrong with failures and omissions by an attorney (failure to confront abuser-witnesses, failure to develop evidence; failure to investigate case law; and more) to bring about a forced settlement, then <u>questions remain</u>. What about violating client's instructions that any settlement had to be with her knowledge, approval, consent, and signature? What about the failure to disclose? What about the fiduciary duties? What about the deceit?

Virtually ignoring the development of the basic statutory discrimination claims, especially sex discrimination, to show background, history, motive, and more, was profound and extreme. The reliance on sterile, procedural constitutional arguments was telling. Defendants call it a "strategy." All experienced litigators know federal judges hate old cases. To quote the presiding judge in both cases, "This old case!" he said from the bench in 2004.

At some point "negligence" turned into intentional, willful negligence with deceit.

Defendant gave plaintiff false information in order to avoid deposing the employer's main witness. It is plaintiff's information and belief that defendant gave such false information intentionally, as deception and fraud.

One, defendant continued in the face of public information and confrontation by plaintiff to refuse to correct his course of action and depose the only long-time manager from plaintiff's office who was and remains this year an active member of the Maryland Bar.

Two, failing to follow client's explicit instructions is a basis for a malpractice claim. <u>Kaempe v. Myers</u>, 361 U.S. App. D.C. 335, 367 F.3d 958, 966, 2004.

Three, defendants are specialist in some areas and had no professional duty to

7

grant the main witness a "pass" from confrontation under oath.

Four, on the contrary, in defendant's judgment he had explained to plaintiff he did not wish to focus on various employees in an effort to make out a conspiracy theory but he wished to focus in her case on plaintiff's boss, John Kominski, a large man who hit the plaintiff, had a history of a bad temper, created a hostile work environment, held back her promotions, and who was the only manager of the law office for many years.

When the time came to carry out his focus, defendant wilted, refused to depose the most important witness and focused faintly where he intended to fail, all as part of a larger picture.

By his own admission defendant blindly followed a direction of evidence during discovery which he had already rejected and had already declined to develop well as evidence and then proceeded to do a poor job developing useful evidence on behalf of plaintiff during deposition. This was intentional, just as refusing to depose plaintiff's boss was intentional, in order, in a total scheme, to intentionally fail to expose the law office and to intentionally fail, in one manner or another, to confront individuals who had worked in the law office.

It is unconscionable that defendant, as a veteran attorney, failed to confront this witness and failed with diligence and zeal on behalf of his client in order to show and support a prima facie case of hostile work environment and discrimination per her statutory discrimination and EEO claims. The professional problem for the defendant lies in his failure to depose with diligence and zeal as well as his failure to depose at all. There was negligence, willful negligence and deception, as well as violations of fiduciary duties.

Defendants' failures and omissions did not come under unsettled proposition of law, informed judgment, or any such defenses. <u>Mills v. Cooter</u>, 647 A.2d 1118, 1994. They defied all public notice of the witness' availability and competency, refusing even to confirm.

Discovery and depositions are needed in this case to determine defendants' sources since they remain not forthcoming about giving plaintiff's boss a "pass." No doubt, plaintiff's employer steered defendant away from deposing their veteran GC of many decades and not focusing on their law office, leaving it difficult to make a out a case of sex or other discrimination in plaintiff's job. And no doubt, defendants want to avoid answering under oath about the facts, circumstances, contacts, and reasons why and how they gave plaintiff's boss, the main witness, a "pass."

It is critical for defendants that they obtain a dismissal before discovery in order to avoid revealing under oath all the facts, circumstances, contacts, and reasons why and how they gave plaintiff's boss a "pass" and failed in many other matters, thereby, deceiving plaintiff, their client.

When plaintiff asked defendant, ie, the head attorney in the law firm TWICE why they gave her boss a "pass" (refusing to depose him), the attorney refused to answer TWICE. That is deception.

Defendant is still not answering. Defendant is still stalling, just as they stalled plaintiff's case. It is a known fact that this employer's M.O. was to STALL to beat down employees' claims (in hopes employees might die or become exhausted). For defendant to aid and abed in this approach and pretend it was a "strategy" is further evidence of defendants' willful negligence and failure of their lawyerly duties.

Discovery and trial will be necessary to affirm the details of the negligence and deceit in tort and in contract and to also inquire into possible collusion between defendants and employer. All will help to shed light on defendants' failure to develop evidence in plaintiff's case which was needed in turn to make out a prima facie case in all her statutory discrimination and EEO claims.

Discovery and trial are needed to show plaintiff would have won her discrimination case and statutory claims in a jury trial of her peers, not a bench trial.

By not confronting plaintiff's boss and not confronting the law office with diligence and zeal, defendants were able to curry favor with the institution or agency and favor with its law office for settlements and more favorable settlements for other clients as well as referral of clients. This raises causes of actions by this plaintiff for defendants' violations as attorneys of their fiduciary obligations to plaintiff in general, as adverse interests, as conflicting interests, and as adverse representation which resulted in harm to her and loss of her claims.

The defendants fail to deny that they refused to depose the plaintiff's boss and to vigorously confront and focus on the employer's law office where plaintiff worked. Violations of attorneys' fiduciary duties provide additional causes of actions for the harm to plaintiff.

Reference plaintiff's 2nd Amended Complaint with Affidavits attached which list additional causes of actions for violations of fiduciary obligations and duties and fraud.

Defendants' violations of fiduciary duties and interests include problems of deceit which raise cause of action for fraud – fraud, fraud as part of fiduciary duty, fraud as part of negligence and gross negligence, and fraud as part of contract violations.

Under D.C. law, plaintiff must plead the elements of fraud with specificity. See six elements listed from <u>Dresser v. Sunderland Apartments Tenants Ass'n</u>, 465 A.2d 835, 839 (D.C. 1983).

With regard to the constitutional due process arguments presented by defendants in her case, it is noted the defendants failed to properly investigate the main <u>AFSCME UNION</u> case upon which they relied heavily. See Judges Decision, June 2005. Defendants claim they developed an administrative appeal "strategy" covering 5 to 10 years, when judges hate old cases, the administrative decision was not binding, and plaintiff remained constructively terminated for approximately 60 months.

If career attorneys at LOC have no rights, stand as anyone "off the street," no more or less than a probationary employee at all times, and if defendants have no liability for anything they did in this area of the lawsuit, including relying on a case which was not applicable; then plaintiff asserts that the mere fact that defendants chose to focus on

9

this weak, if not bogus direction, and to prolong it, was used to further perpetuate the goal of neglecting development of evidence, focus, and exposure of statutory discrimination by the law office and individual colleagues who worked or had worked in that office.

One only needs to look at this presiding judge's 2005 decision where he held the case was not made for statutory discrimination and EEO claims while attorneys had ignored much of the development, especially the sex discrimination issues, which would have pointed the finger at and focused on colleagues in the law office and focused on the law office itself; and would have explained at least original motivations from 1992 and the time line as events occurred, if not much more.

All was done to bring about one conclusion, a set-up, a forced settlement, and all the details that go with that paradigm, including no intentions to litigate the case as well as ignoring, undermining, and defying plaintiff's instructions as client.

Plaintiff feels betrayed by her own colleagues whom she trusted. Plaintiff feels betrayed by her profession, by the courts, by the system, when she invested her life in it. After plaintiff invested her life since her youth, since before open-heart surgery for her birth defect, since before she left her blue-collar parents' beloved farm, toward her career, plaintiff has spent 15 years, some of the best years of her life and what should have been the best years of her career, fighting this injustice, where all for which she and her parents worked has been trashed.

When plaintiff met defendant early on to represent her she asked defendant if he had problems pursuing colleagues or a government law office. The outcome is her own attorney did not want to develop the evidence and record to support her statutory claims of discrimination by confronting fellow attorneys and shedding light on their law office.

Dated: April 29, 2008

Respectfully submitted,

*[signature]*
Iris Wood, Plaintiff *Pro Se*

10

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IRIS WOOD,   )<br>  )<br>   Plaintiff, *Pro Se*   )<br>  )<br>v.   )<br>  )<br>IRVING KATOR, MICHAEL KATOR,   )<br>   CATHY A. HARRIS,   )<br>   Kator, Parks & Weiser, PLLC,   )<br>   (previously known under other   )<br>   law firm names)   )<br>  )<br>   Defendants   )<br>  ) | Civil Action No. 07-1597 (rmu)<br>(JURY TRIAL DEMANDED) |

## ORDER

Upon consideration of defendant's Motion to Dismiss, plaintiff's Response, and the record herein, it is

ORDERED that defendants' motion be DENIED.

IT IS FURTHER ORDERED that plaintiff's complaints shall NOT BE DISMISSED.

Dated: May   , 2008

_____
JUDGE, UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Certificate of Service

I hereby certify that a copy of the foregoing are served by first class mail on:

Adrienne Tranel, Esq
Kator, Parks & Weiser, PLLP
1200 18th Street, NW, Tenth Floor
Washington, DC 20036

Iris Wood, pro se
Date: 4-29-2008