UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED
MAY 2 7 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| IRIS WOOD, <br><br> Plaintiff, *Pro Se* <br><br> v. <br><br> IRVING KATOR, MICHAEL KATOR, CATHY A. HARRIS, Kator, Parks & Weiser, PLLC, (previously known under other law firm names) <br><br> Defendants | Civil Action No. 07-1597 (RMU) <br> (JURY TRIAL DEMANDED) |

### PLAINTIFF'S OPPOSITION AND RESPONSE TO DEFENDANTS' MAY 12, 2008, REPLY TO PLAINTIFF'S APRIL 2008 OPPOSITION TO DEFENDANTS' MARCH 2008 MOTION TO DISMISS

Plaintiff, pro se, opposes and responds herein to defendants' May 12, 2008, Reply to Plaintiff's April 2008 Opposition to Defendants' March 2008 Motion to Dismiss under FRCP 12(b)(6) alleging failure to state a claim upon which relief can be granted.

Plaintiff, pro se, opposes and denies defendants allegations that plaintiff has failed to state a claim upon which relief can be granted.

Plaintiff references and incorporates the presiding judge's March 2008 comments and orders in the civil docket for the above referenced case number pertaining to amended complaint and second amended complaint; and references her prior opposition and response filed on April 30, 2008.

Plaintiff, pro se, submits herein an Opposition and Response and a proposed Order Denying Motion to Dismiss plaintiff's amended complaint and has submitted second amended complaint under separate cover.

Dated: May 22, 2008

Respectfully submitted,

*Iris Wood*, Plaintiff *Pro Se*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IRIS WOOD, ) | |
| ) | |
| Plaintiff, *Pro Se* ) | |
| ) | |
| v. ) | Civil Action No. 07-1597 (RMU) |
| ) | (JURY TRIAL DEMANDED) |
| IRVING KATOR, MICHAEL KATOR, ) | |
| CATHY A. HARRIS, ) | |
| Kator, Parks & Weiser, PLLC, ) | |
| (previously known under other ) | |
| law firm names) ) | |
| ) | |
| Defendants ) | |

## PLAINTIFF'S OPPOSITION AND RESPONSE TO DEFENDANTS' MAY 12, 2008, REPLY TO PLAINTIFF'S APRIL 2008 OPPOSITION TO DEFENDANTS' MARCH 2008 MOTION TO DISMISS

Plaintiff, pro se, opposes and responds herein to defendants' May 12, 2008, Reply to Plaintiff's April 2008 Opposition to Defendants' March 2008 Motion to Dismiss under FRCP 12(b)(6) alleging failure to state a claim upon which relief can be granted.

Plaintiff, pro se, opposes and denies defendants allegations that plaintiff has failed to state a claim upon which relief can be granted. Plaintiff has stated a viable claim upon which relief can be granted.

Plaintiff references and incorporates the presiding judge's March 2008 comments and orders in the civil docket for the above referenced case number pertaining to amended complaint and second amended complaint; and her prior opposition and response filed on April 30, 2008.

Plaintiff, pro se, submits herein an Opposition and Response and a proposed Order Denying Motion to Dismiss and has submitted second amended complaint under separate cover.

The court should deny defendants' March 21, 2008, Motion to Dismiss plaintiff's amended complaint and should also accept plaintiff's second amended complaint

submitted under separate cover.

It is questionable which complaint is addressed by defendants in the May 12, 2008, Reply, while Defendants' March 21, 2008, Motion to Dismiss pertains to plaintiff's amended complaint. The court should exclude defendants' March 12, 2008, Reply for failure to reply timely and for lack of clarity, LCvR 7(d).

Defendant has raised a new case, Washington v. District of Columbia, 538 F. Supp. 2d 269, decided by this presiding judge on March 18, 2008. In the case the plaintiffs are not pro se and are represented by counsel with litigation experience. Furthermore, plaintiffs in the Washington case first asked the court for preliminary injunctive relief (January 11, 2008) and then for leave to file a second amended complaint neither of which are issues raised by the defendants' March 21, 2008, Motion for Dismissal. In addition, reasons given in the two cases are different.

Defendants insist plaintiff has failed to show that but for defendants' failures, errors, and omissions, plaintiff would have won her case. Inspection of other complaints filed before this and other courts pertaining to legal malpractice do not require such provision(s). Examples from the best treatises don't either.

Continuing with this approach, defendants would require pro se plaintiff to satisfy and make out the requirements in a complaint to prevail simultaneously in a motion for summary judgment when no such motion is pending in the above referenced case. Or are defendants just attempting to plant a seed or germ of an idea in advance with the presiding judge?

Defendants' demands are not called for in a complaint to state a claim for relief. The purpose of a complaint is to put defendants on notice of the claims and causes of actions. Defendant understands the claims pertain to legal malpractice, violations of fiduciary duties including conflicts of interests and failure to follow client's instructions, fees, and deceit.

If defendants were to have their way, pro se plaintiff's complaint and submittals would be scrutinized more and required to have more than those filed by experienced litigants of the DC Bar.

Haines v. Kerner, 404 U.S. 519, 520 (U.S. 1972) held pleadings are sufficient to call for the opportunity to offer supporting evidence and to substantiate claims.

A pro se plaintiff's complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Haines, at 520-521.

In Edelberg v. Roberts, Civil Action No. 04-1992 (D.D.C. 2005) the court explained where the injury suffered as a result of legal malpractice is the loss of a cause of action, the measure of damages is generally the value of the claim lost.

Where doctor's or attorney's lack of care and skill is not so obvious that the trier of fact could have found negligence as a matter of common knowledge (which is usually "failure" to act), plaintiff is required to present expert testimony establishing the standard of care during trial in the District of Columbia (O'Neil case, page 342).

There are two exceptions to the requirement for expert testimony during trial. One is in the matter of common knowledge (O'Neil above, page 342), usually "failure" to act by the professional, and the other may apply to bench trial if the standard of care is recognized by the trial court which is familiar with the standards of practice in its locality.

Defendants reference in general the New York case, Morrison Cohen Singer & Weinstein v. Schwartz, April 1995, to address trial strategy and judgment issues yet defendants provide no trial strategy or basis for judgment. Defendants are the ones making vague assertions and relying on generalities where the record is replete with examples given by the plaintiff. Reference Plaintiff's 1st Affidavit and all arguments submitted into the record. According to defendants, everything should be a secret from the client.

Indeed, as a strategy, defendant made much to do about generic information on sex discrimination against women in general by plaintiff's institutional employer, when plaintiff, in contrast, was one of the most educated women employees. However, defendants steadfastly shrank from going after information or building anything which pointed to plaintiff's specific case of sex discrimination or to her specific offenders and abusers. They shrank from gathering evidence that pointed to her being singled out, pushed out, or harassed in her office, because of her high-profile eligibility for career advancement to senior or executive levels with three degrees.

Defendants failed to obtain copies of basic personnel actions and papers from plaintiff's office to show her competitive standing in the office and institution and how she was being held back as a professional woman and as a woman with a history of a birth defect.

Did the defendants ever ask plaintiff's boss who was a large man what did he think he was doing striking anyone, striking an employee, striking a woman, striking someone with a history of a handicap or birth defect?

Check ups and tests are necessary to monitor plaintiff's heart. Plaintiff's boss struck her during one of his temper tantrums about sick leave. Ironically, plaintiff had used sick leave for an appointment with her cardiologist. Plaintiff had returned earlier than expected from the appointment which set him off. Yet defendants did not see the necessity to question him under oath for evidence in the case and for evidence to support a prima facie case for sex or ADA discrimination. Now they need to explain why.

Plaintiff's boss even filed his own report with security about his striking plaintiff yet defendants never obtained a copy for evidence.

3

Plaintiff's boss was discovered to have a brain tumor with full blown symptoms after which he recovered to practice law part time. Before he was diagnosed, plaintiff was sent to have her head examined as a cover for her boss' temper, conduct, provocation, and bullying so there would be someone to blame.

Plaintiff was forced to endure years of labeling and pursuit with hours of examinations which damaged the quality of her life and ruined her career yet revealed not one clinical diagnosis based upon cat-scan or interview in order to cover for her boss' brain tumor, temper tantrums, and his finally provoking her once at work during a 4 year period.

Who among us could stand up to that scrutiny? Clinicians will tell you that just the experience of forced examinations can cause an overlay of anxiety or sadness.

Plaintiff's catt-scan was "perfect," said the physician, yet her boss had a history with a bad temper and an undisclosed brain tumor; because the employer chose to blame the woman employee instead of the male manager.

Plaintiff was required to endure her boss' assault without being able to fight back because she was already the blaming post. He was not suspended or punished or fired or sent for medical examination which should have been enough evidence of disparate treatment between men and women in plaintiff's office. Instead plaintiff was again blamed and suspended and terminated from her job and career for life.

What price should a woman pay to cover for a grown man? For an important man?

Instead of sending her boss for forced examination and instead of putting him on disability, plaintiff was forced as a woman to take the blame, responsibility and labels for him. Plaintiff was forced to sacrifice everything she and her parents had worked for since before her open-heart surgery for her birth defect and endure a false, stigmatizing label for life with no diagnosis. Her boss was allowed total control of his medical life and allowed to bow out and retire with dignity and his real medical diagnosis.

Plaintiff was required to endure for life yet another label added onto her birth defect label, made public by her appeals. What's the harm? Just pile on another medical label for life, endure one more for someone else. Sacrifice plaintiff's career and life for an important man.

After plaintiff was suspended and terminated, defendants failed to file the additional EEO claim pertaining to her termination, or earlier pertaining to her "constructive termination" while on 5 year suspension.

The employer never produced internal documents such as the bifurcated decision from administrative charges against plaintiff in 1995, the letter from Congress in summer 1995 instigating change in the forced mental exam process to bring it in line with the

4

executive branch, or the report filed by plaintiff's boss about his hitting her.

Plaintiff was denied one promotion under her promotion plan for a year behind her male team member. That was processed only at the behest of a Congressional Sub-Committee Chairman's office involved with funding for promotions in plaintiff's office.

The other promotion was denied totally by timing the trumped up charges only weeks prior to her next promotion eligibility which defendants intentionally ignored.

When will the defendants explain the strategies or lack of strategies in the preceding paragraphs which is basic? When will they explain their strategy in failing to thoroughly investigate or seek evidence for plaintiff's statutory EEO claims on the administrative or court levels? How many meetings did defendants attend to develop evidence alone for plaintiff's EEO claims vs meetings to discuss settlement to some extent? When will they explain their strategy for holding an employment case for 10 years prior to filing in court?

Defendant is still not answering. Defendant is still stalling, just as they stalled plaintiff's case. It is a known fact that this employer's M.O. was to STALL in order to wear down employees and their claims. For defendant to aid and abed in this approach and pretend it was a "strategy" is further evidence of defendants' willful negligence and failure of their lawyerly duties.

It is also well known that federal judges hate OLD cases, too, yet defendants set plaintiff up for an old civil rights case in court which surely foretold only one outcome: a forced settlement; ie, if defendants gave certain individuals "passes" from confrontation and sworn statements.

Defendants again attack plaintiff's pro se status.

Federal courts require inartful, even crudely written, pleadings to be construed liberally in pro se actions and so construe that complaints state a cause of action. *Boag v. MacDougall*, 454 U.S. 364 (1982); Certiorari granted, 642 F.2d 455, reversed and remanded. Also, Baldwin County Welcome Center v. Brown, 466 U.S. 147 (1984).

Pleadings are construed with deference to pro se litigants. Maleng v. Cook, 490 U.S. 488 (1989). Pleadings are sufficient to call for the opportunity to offer supporting evidence and to substantiate claims. Haines v. Kerner, 404 U.S. 519, 520 (U.S. 1972).

Kerner, *id*, presents no conflict with the case at hand. GW Professor John F. Banzhaf, III, law professor and attorney, successfully filed pro se complaints involving the tobacco and food industries. His status as an attorney and professor were not prohibitive. See Banzhaf v. F.C.C., 405 F.2d 1082 (DC Circ. 1968).

Plaintiff pro se is not admitted to practice law in this court and is not admitted to practice law in local courts in the Washington, DC, area. Plaintiff pro se is not experienced or expert in trial work or legal malpractice or employment law case work. (Reference Plaintiff's 2ND Affidavit.)

In this instance, the presiding judge opined in 2005 plaintiff pro se has diminished capacity to perform skills in federal government procurement and administrative law and separated plaintiff from her ability to perform such specialized federal government work over 10 years ago despite her history of expertise, specialized skills, years of service and experience, eligibility for promotions, and opportunity for advancement.

Defendants conclude their arguments largely on holdings in Richards v. Duke University, 480 F.Supp.2d 222 (D.D.C. 2007) which does not apply to this case on any point.

The court in Richards based its ruling and holdings for dismissal upon the following issues:

1- lack of jurisdiction over parties,
2- lack of subject matter jurisdiction,
3- statute of limitations, and
4- unprotected rights.

The court explained that the subject matters of Richards' claims are fantastic and patently insubstantial under F.R.C.P. Rule 12(b)(1). Richards, page 222, 224.

The court in O'Connor v. U.S., 159 F.R.D., 22, 23 (D.Md.1994), also cited in Richards at p 234, found lack of subject matter jurisdiction over the complaint when it held that a frivolous and patently unsubstantial complaint may be dismissed for lack of subject-matter jurisdiction under FRCP 12(b)(1). See similar conclusion in Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

No jury considers the subject matter of legal malpractice to be frivolous or fantastic, as claimed by defendants. Juries consisting of women and minorities and other citizens do not consider civil rights employment issues to be frivolous or fantastic.

The decision in Richards does not provide a different "pro se" standard to the detriment of plaintiff or to the benefit of the defendants in this case.

The case at hand is filed in good faith and is not frivolous or meritless legally or factually. See Schwarz v. FBI, Civil Action No. 00-2758 (JDB, September 24, 2002).

Defendants put forward an attack based upon "fanciful" conspiracy from the Richards case when plaintiff has not filed a cause of action for Collusion against defendants. The courts are allowed to dismiss "frivolous" complaints whether filed by attorney, non-attorney, or pro se litigants. Plaintiff reserves the right to request

permission to add Collusion as a cause of action at a later date if the evidence produced during discovery warrants or if a combination of facts and evidence would cause one to conclude such findings.

The current case here is certainly not frivolous or fantastic. Furthermore, it falls within the "common knowledge" exception to the expert testimony requirement on many issues for repeated or willful failure by defendants to act. Failure to act is the kind of care and skill in malpractice cases that can be found within the jury's "common knowledge" without expert testimony. O'Neil v. Bergan, No. 81-1034, District of Columbia Court of Appeals, 452 A.2d 337, 342, 1982.

Plaintiff has been reserved, not frivolous, about filing a cause of action against defendants for Deceit (fraud) after they repeatedly failed to provide answers to the client in the past and again in these court pleadings about matters such as discovery and despite confrontations, questions and opportunity since fall 2004 to answer; as if it is a secret to be kept from the client and the client has no right to know; as if the attorneys are the parents and the client is a child or retarded. Indeed, without discovery in this case, the client will never have answers.

There is nothing frivolous about these matters.

There may be issues which require analysis such as how an employment case could linger for 10 years with the employee suspended for 5 years yet a much shorter time constitutes "constructive termination" with a window for filing in court before actual termination.

Explaining the tapestry of omissions and events woven by the defendants to get around plaintiff's instructions about settlement may also require comprehension of a higher nature. If expert testimony is needed then it will be provided during discovery as required by the judge.

The decision by the Richards' court per 12(b)(6) rested upon plaintiff's claim as "time-barred" at page 237.

The court's final holdings at page 222, Richards case, make no reference to the plaintiff's pro se or professional status and such comments may be considered dictum.

In dictum the court found Richards had not plead the specificity of fraud as required under D.C. law, page 237. Even as dictum the case is not applicable here because any jury would find pro se plaintiff has shown basic elements of simple or willful negligence under both tort and contract law as required under D.C. law, including existence of attorney-client relationship; standard of care, breach of duties and fiduciary duties by attorney defendants; and proximate cause of harm and damages to plaintiff.

In the current case, plaintiff's complaints and affidavits in support of complaints, are presented as evidence and are replete with facts which support clear examples of

7

negligence, especially failures to act, and demonstrate defendants' breach of professional or fiduciary duties and harm to plaintiff and her case. <u>Richards</u>, page 224.

They would convince any jury of a prima facie case of professional negligence.

A jury would see that pro se plaintiff has made out her claims and causes of action in negligence and more, upon which relief can be granted.

Again, in <u>Edelberg v. Roberts</u>, Civil Action No. 04-1992 (D.D.C. 2005) the court explained where the injury suffered as a result of legal malpractice is the loss of a cause of action, the measure of damages is generally the value of the claim lost.

Furthermore, in <u>Richards</u> at page 235, the court concluded that plaintiff Richards was a knowledgeable attorney. The undersigned pro se plaintiff certifies that she is NOT experienced, knowledgeable or expert in matters of court litigation or legal malpractice, an assertion which the defendants do not oppose. See Defendants' May 21 Reply, page 3, 2nd paragraph. Also, reference plaintiff's pleadings and 2nd Affidavit in this case.

It is noted again that the presiding judge in this case himself concluded the undersigned pro se plaintiff suffers sufficient deficiencies to exclude her from working even in her experienced, skilled area of administrative law in a setting where she had advancement opportunity and promotion eligibility. Reference District Court Decision, <u>Wood v Billington, 03-1343 (RMU)</u>, June 2005.

A judge would find it difficult to hold plaintiff to the standards of a practicing attorney or expert in litigation, legal malpractice, civil rights or employment law while separating her from her own specialty in administrative law 10 years ago with expertise, skills, eligibility for promotions and opportunity for advancement.

Defendants' favorite attack has been to scold and guilt-trip a citizen for filing a claim pro se because they have nothing else. Defendants want to order pro se plaintiff out of the courthouse; order her to hire an attorney to decipher the 10+ years of "strategy" by defendants about which defendants will not respond.

Ironically, defendants chastise plaintiff for representing herself when they have foregone representation by their malpractice insurance carrier in order to represent themselves. That's the kettle calling the pot black. Plaintiff never thought she might feel sorry for a federal judge with two pro se parties.

Among other reasons, having no counsel from their insurance carrier to manage their defense gives defendants freedom to litigate and appeal and freedom from pressure to settle, while it has become known that defendants don't like it when their clients choose the same route.

Defendants' legal work and arguments are so elementary in their own case; it provides evidence of their inept legal work in their and plaintiff's case.

8

These are defendants' only tools. They have nothing more than elementary demands for dismissal, with general arguments used against all pro se plaintiffs, hoping the judge will take up a torch against a pro se plaintiff's demand for a jury trial.

Defendants show no better legal skills in their own case than they showed in plaintiff's case. They demonstrate poor, elementary legal work and forced arguments.

Defendants' only alternative is to invite a federal judge to punish a pro se plaintiff, deny yet another citizen a jury trial, and, above all, let themselves out of discovery.

We should have a right to be heard before a jury of our peers. Men and women have died for our right to be heard. Is it justice or Just Us?

Plaintiff was also mindful during the remainder of 2004 that this same judge had warned in September 2004 he may later allow plaintiff's case to go without the attorney who had handled the whole 10 year history of the case. Fall 2004 followed months of exhausting pressures to withdraw or settle while plaintiff's husband was ill out of state.

Complaining about defendant's failure to depose plaintiff's boss who struck her physically when defendants and her boss knew plaintiff was status post open-heart surgery with a history of a birth defect; or complaining about plaintiff's learning in fall 2004 that Discovery by defendants had not included asking for or obtaining basic personnel documents from and about plaintiff's office, division and employees in an employment case; would not likely help plaintiff.

No doubt plaintiff was not at her best in 2004 during the last months of her husband's life. While plaintiff was driving hundreds of miles back and forth to Washington, DC, alone in 2004, plaintiff was exhausted, attempting to coordinate and monitor her case, leave messages coming & going and late-early, and assist her husband prior to his death while she was frequently away in Washington.

Dated: May 22, 2008

Respectfully submitted,

*[signature]*
Iris Wood, Plaintiff *Pro Se*

9

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IRIS WOOD,** )<br>)<br>Plaintiff, *Pro Se* )<br>)<br>v. )<br>)<br>**IRVING KATOR, MICHAEL KATOR,** )<br>**CATHY A. HARRIS,** )<br>Kator, Parks & Weiser, PLLC, )<br>(previously known under other )<br>law firm names) )<br>)<br>**Defendants** )<br>) | Civil Action No. 07-1597 (RMU)<br>**(JURY TRIAL DEMANDED)** |

## ORDER

Upon consideration of defendant's Motion to Dismiss, plaintiff's Response, and the record herein, it is

ORDERED that defendants' motion be DENIED.

IT IS FURTHER ORDERED that plaintiff's complaints shall NOT BE DISMISSED.

Dated: May   , 2008

---

JUDGE, UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Certificate of Service

I hereby certify that a copy of the foregoing has been served by first class mail on:

Adrienne Tranel, Esq
Kator, Parks & Weiser, PLLP
1200 18th Street, NW, Tenth Floor
Washington, DC 20036

_____
Iris Wood, pro se
Date: 5-24-2008